IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATIONAL AIR TRAFFIC CONTROLLERS )
ASSOCIATION et al., ) Case No. 1:94-CV-00574
)
   Plaintiffs, )
) Judge Ann Aldrich
    v. )
)
NORMAN Y. MINETA, Secretary, U.S. )
Department of Transportation et al., ) <u>MEMORANDUM AND ORDER</u>
)
   Defendants. )

   Before this Court is *pro se* petitioner Tracy Jenson's ("Jenson") Motion for Order of

Contempt and Request for Hearing [Docket No. 92] against the Federal Aviation Administration ("FAA").

Jenson alleges that the FAA has failed to comply with this Court's March 2, 1998 Order [Docket No. 69]

(the "1998 Order") vacating the FAA's privatization decision regarding certain air traffic control towers and

remanding the matter to the FAA for further proceedings.  For the following reasons, this Court denies

Jenson's motion.

### I. Background

   In 1994, the National Air Traffic Controllers Association ("NATCA"), which represents air

traffic controllers working for the FAA, along with two individual air traffic controllers, filed this action

challenging the FAA's decision to privatize certain air traffic control towers.  In the 1998 Order, this Court

granted partial summary judgment in favor of NATCA and the individual plaintiffs, vacating the privatization

program as it then existed, and remanding to the FAA for further administrative proceedings.  Nowhere in

the 1998 Order, or in the accompanying Memorandum and Order [Docket No. 68] does the Court discuss

the prospective pay arrangements for air traffic controllers working in towers scheduled for privatization by the FAA.

Jenson was employed as an air traffic controller by the FAA until April 2003, when he resigned his position.  He was represented by NATCA during his employment.  NATCA-FAA Collective Bargaining Agreement ("CBA") Art. 2 § 1.[1]  NATCA is the exclusive representative of all air traffic controllers employed by the FAA.  *Id.*  As such, it "is entitled to act for, and negotiate collective bargaining agreements covering, all employees" in the specified collective bargaining unit -- in this case, air traffic controllers.  5 U.S.C. § 7114(a)(1).

Pursuant to that authority, NATCA negotiated a collective bargaining agreement with the FAA that provides for a grievance process for handling complaints by "any employee concerning any matter relating to the employment of the employee."  CBA Art. 9 § 1(a).  Under Article 9 of the CBA, "[e]xcept as limited or modified by Sections 3, 4, and/or 5, [the Article 9 grievance procedure] shall be the *exclusive* procedure available to [NATCA, FAA] and the employees in the unit for resolving grievances."  CBA Art. 9 § 2 (emphasis added).  This dispute, involving rates of pay, does not fall within the listed exceptions.[2]  The grievance process concludes with arbitration before a panel of three arbitrators, and " [t]he decision of the arbitrator is final and binding."  CBA Art. 9 § 10.

---

[1]     A copy of the NATCA-FAA collective bargaining agreement is available at http://www.faa.gov/ahr/policy/agree/agrees/term/natca-at/Natca98.cfm (last visited Sept. 22, 2005).

[2]     The listed exceptions are: (1) any claimed violation of subchapter III of Chapter 73, Title 5 U.S.C. (relating to prohibited political activities); (2) retirement, life insurance or health insurance; (3) a suspension or removal under 5 U.S.C. § 7532 (relating to national security matters); (4) any examination, certification or appointment (5 U.S.C. § 7121(c)(4)); (5) the classification of any position which does **not** result in the reduction-in-grade or pay of any employee; (6) the removal of probationers; (7) matters relating to 5 U.S.C. 2302(b)(1) dealing with certain discriminatory practices where an employee may elect grievance or another procedure but not both; and (8) statutory appeal procedures.  CBA Art. 9 §§ 3-5 (emphasis added).

In his motion for contempt, Jenson alleges that the 1998 Order resulted in certain air traffic controllers, including himself, being put into a new pay system, resulting in smaller pay increases than other employees. He alleges that the FAA failed to inform these controllers that they would be placed at the bottom of the pay scale, and claims that this result is not what this Court intended in its 1998 Order. Jenson did not file a grievance with the NATCA or with the FAA concerning this dispute. (Declaration of Anthony Tisdall ¶ 8 [Docket No. 96]) He filed the instant motion for contempt on September 7, 2004. Following a Joint Proposed Stipulation to Stay Briefing [Docket Nos. 93 and 94] entered on October 15, 2004, no action was taken until February 24, 2005. On that date, the FAA filed its opposition, following notice it received from Jenson on February 3, 2005, that he wished to proceed with the motion for contempt. (FAA Opp'n at 3)

## II.   Discussion

The FAA raises two arguments in opposition to Jenson's motion for contempt. First, the FAA contends that because Jenson's dispute is over rates of pay, a subject within the scope of the CBA, this Court is without jurisdiction to hear Jenson's motion. Second, the FAA contends that Jenson has provided no evidence that the FAA has in any way violated this Court's 1998 Order, and that Jenson's complaints arise out of the FAA's compliance with the 1998 Order, so that the FAA is not in contempt. Because this Court finds that it lacks jurisdiction, Jenson's motion will be denied. In the alternative, because Jenson has not shown, by clear and convincing evidence, that the FAA has violated the 1998 Order, Jenson's motion will be denied.

### 1.   Subject Matter Jurisdiction

The CBA provides that the grievance procedure and subsequent arbitration are the exclusive method of resolving certain disputes. CBA Art. 9 § 2. Jenson's dispute does not fall within any

of the listed exceptions.  *See* CBA Art. 9 §§ 3-5.  Therefore, this Court is without jurisdiction to hear the dispute.  *Armco Employees Indep. Fed'n, Inc. v. Armco Steel Co.*, 65 F.3d 492, 496 (6th Cir. 1995) (holding that "where a labor agreement mandates arbitration, 'courts must order resort to private settlement mechanisms without dealing with the merits of the dispute.'") (citation omitted).  While this Court must "liberally construe" *pro se* pleadings, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), no amount of liberal construction creates federal court jurisdiction where none exists.

### 2.   *The FAA's Compliance with the 1998 Order*

To establish civil contempt, "the petitioner must prove by clear and convincing evidence that the respondent violated the court's prior order."  *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). Specifically, Jenson must show that the FAA "'violate[d] a definite and specific order of the court requiring [the FAA] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'"  *Id.* (citation omitted).  The burden lies with Jenson to "make a prima facie showing of a violation." *Id.*  Without such a showing, Jenson's contempt motion must be denied.

In his motion, Jenson alleges that the FAA somehow violated the 1998 Order by:

> "fail[ing] to inform the court that if the people in the fourth
> year of the program (to contract out towers) were delayed in
> moving, that it may cause them to be put into a new pay system
> differently[sic] resulting in smaller pay increases than other
> identical employees received, and smaller pay increases than
> they would have received without the delay in the program.

Jenson's Mot. at 2.  According to Jenson, this "causes [these] employees to be 'victims' of the court without that being the intention of the court."  *Id.* at 3.  However, the 1998 Order does not address the pay regulations for any employees of the FAA, much less the specific treatment of controllers at the towers scheduled for privatization.  The 1998 Order does two things: it (1) vacates the FAA's privatization

decision at that time, and (2) remands the matter to the FAA for further proceedings.

Therefore, Jenson has not met his burden to demonstrate, by clear and convincing evidence, that the FAA has "violated a definite and specific order of the court" by performing or failing to perform an act required by an order of this Court.  His contempt motion will therefore be denied on the merits as well.

### III.   Conclusion

For the foregoing reasons, the Court denies Jenson's motion for contempt [Docket No. 92] for lack of subject matter jurisdiction, or alternatively, for failure to show contempt by the FAA of any order of this Court.

IT IS SO ORDERED.

    s/Ann Aldrich               
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: September 30, 2005**